## LANDON v. WM. E. HUSTON DRUG CO. et al. (No. 8462.)

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 18, 1916.)

1. BILLS AND NOTES ☞365(1)—GOOD-FAITH PURCHASERS.

A purchaser of notes before maturity for valuable consideration without notice of any defense or defect can recover thereon, though the maker has a good defense as against the original payee.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 944, 958; Dec. Dig. ☞ 365(1).]

2. BILLS AND NOTES ☞334 — GOOD-FAITH PURCHASERS.

Notice of defects in notes acquired after purchase by purchasers in good faith without notice does not affect the holder standing as a bona fide purchaser.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 812, 813; Dec. Dig. ☞ 334.]

3. BILLS AND NOTES ☞342 — GOOD-FAITH PURCHASERS—EVIDENCE.

The mere fact that the edge of notes showed perforations, indicating that they might have been attached to other paper, is not sufficient to show notice of defects or defenses against them.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 830–841; Dec. Dig. ☞ 342.]

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

4. BILLS AND NOTES ⬅️537(1)—EVIDENCE—
QUESTIONS FOR JURY.
Evidence *held* to require peremptory instruction for plaintiff in action by holder of notes upon such notes against the maker and indorsers.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1862, 1871–1875, 1891–1893; Dec. Dig. ⬅️537(1).]

Appeal from Cooke County Court; R. V. Bell, Judge.

Action by A. C. Landon against the Wm. E. Huston Drug Company and others. Judgment for defendants, and plaintiff appeals. Reversed, and judgment rendered for plaintiff.

Garnett & Garnett and James Ralph Bell, all of Gainesville, for appellant. Culp, Murphy & Culp, of Gainesville, for appellees.

BUCK, J. [1] After a careful examination of the record in this case, including the statement of facts, we have reached the conclusion that plaintiff's tendered peremptory instruction should have been given by the trial court. If plaintiff was the purchaser of the notes given by defendants to the Vernon Advertising & Manufacturing Company, before maturity and for valuable consideration, and without notice of any defense or defect, he was entitled to recover thereon, even though the maker of the notes, the Wm. E. Huston Drug Company, had a good defense as against the Vernon Advertising & Manufacturing Company. Landon v. Foster Drug Co., 186 S. W. 434; article 589, Vernon's Sayles' Texas Civil Statutes; Daniel v. Spaeth, 168 S. W. 509; Kauffman & Runge v. Robey, 60 Tex. 308, 48 Am. Rep. 264; Texas Banking & Insurance Co. v. Turnley, 61 Tex. 365. We do not understand that appellees question the correctness of this proposition of law, but it is urged that the evidence does not show that appellant was a bona fide purchaser of the notes, and hence he is in no position to claim protection as such bona fide holder. We are directed to no evidence, and after a careful consideration of the statement of facts have found none, even tending to establish the contention of lack of good faith in the purchaser of the notes, except the testimony of appellant on cross-examination that:

"These notes had a perforated margin, showing that they had been detached from something, such as is ordinarily used by manufacturing concerns who float serial notes."

While the appellant further testified that he had had some trouble in collecting some of the notes (other than those in controversy) purchased by him from A. J. Boatright of the Vernon Advertising & Manufacturing Company, yet he further testified that at the time of the purchase of these notes he did not know of any trouble that had been experienced by the company (meaning the Vernon Advertising Company), and that at the time of said purchase he did not know of any defense or defenses that the defendants, or any one else, had against the notes, and had no notice of any infirmity of any of said notes, or any fraud or misrepresentation practiced by the company aforesaid in procuring said notes. It is evident, taking the testimony as a whole, that the trouble he experienced in collecting some of the notes purchased from the advertising and manufacturing company occurred subsequent to the purchase of the notes in question.

[2] Of course, any notice received subsequent to his purchase of the notes would not affect his standing as a bona fide purchaser or holder. He testified that, when approached by Boatright with regard to purchasing notes held by the advertising company, he agreed to purchase some $4,000 worth a month of such notes, reserving the right to decline any such that, after investigation, he deemed not satisfactory; that before purchasing the notes in question he procured from R. G. Dun a favorable report as to the standing and credit of the defendants; that at the time of said purchase no contract was attached to the notes, nor did the plaintiff know of any such contract in existence.

[3] We are of the opinion that the mere fact that the notes in controversy had a perforated margin, standing alone, is insufficient to show notice, and that, this being the only evidence adduced by the defendants upon the question of notice, the court should have given the peremptory instruction asked by plaintiff. In Landon v. Halcomb, 184 S. W. 1098, the perforated margin of the notes was mentioned as one of a number of circumstances which tended to show notice to the plaintiff. The case last cited, by this court, is relied upon by appellees in support of the contention that sufficient notice had been shown of an alteration having been made in the notes by their separation from some other instrument. The strongest case we find in support of appellees' contention is Stephens v. Davis, 85 Tenn. 271, 2 S. W. 382, where defendant agreed to become the agent for a patented article and agreed to execute his note for $225, the price of 15 sets of springs, provided that there should be inserted in said note the condition that he, the defendant, should have credit on the note at maturity for such of the springs as might then remain unsold. This condition was agreed to by the agent of the payee, but said agent declined to put the condition on the face of the note, on the ground that there was not sufficient space therefor. He did write the condition, however, on the "stub" of the note (the note and stub attached being in a book of blank notes), and defendant signed the note upon the promise of said agent that the stub "should stay there if it was four yards long." Later the note was detached from the stub and transferred for value, whether before or after maturity does not appear, to the plaintiff in the suit. Upon an action

---

by the latter on the note, the maker pleaded a material alteration by virtue of said detachment, which had altered the instrument as actually made, and as agreed upon between the parties thereto, by removing therefrom the condition that he should have credit on the note for the springs unsold. The Supreme Court of Tennessee sustained defendant's plea, on the ground that by agreement of the parties before the signing of the note this condition was a substantive part of the note, and restricted its negotiability the same as if the condition had been indorsed upon the face of the note; that the severance of the condition without the consent or knowledge of the maker was a material alteration of the original contract to his prejudice, and therefore the act was forgery; that the fact that the stub could be easily separated from the note could make no difference, as no rule of law required the maker to anticipate that the payee would commit a felony by the alteration.

There is no contention made by the appellees in the instant case that it was the understanding and agreement of the original parties to the notes in question that they should not be negotiated, nor is there any evidence in the record, so far as we can discover, that the notes were ever attached to any other instrument, or that their negotiable nature was in any way conditioned by a contemporaneous agreement between the parties. Therefore, even though it should be held that the Tennessee court announces the true doctrine with reference to the state of facts there disclosed, the principle has no application to this case.

As the evidence of the understanding that the notes should be freely negotiable, defendant testified that he had paid the first of the series of six notes, and had sent a check in payment of the second note, but later stopped payment on the check and returned said second note to the plaintiff. He further testified that, as far as possible, he had carried out the advertising scheme provided for under the contract between him and the advertising company, and had sold a number of the articles furnished him by the said company, in part consideration, at least, of the notes, and did not even plead a tender to this plaintiff of the articles remaining or the value of the articles sold. The controlling reason he gives for not paying the notes is that he was advised by his attorney that the plan of advertisement offered by the advertising company was a lottery or a gambling scheme. However, even after being so advised, the evidence shows that the defendant proceeded to carry out the plan provided for in his contract with the advertising company.

[4] We are of the opinion that the trial court should have given the peremptory instruction requested, and that therefore the judgment must be reversed. The record show-ing that the evidence was fully developed in the trial, this court feels impelled to enter the judgment which the trial court should have entered upon the verdict of the jury under peremptory instructions to find for plaintiff, and therefore judgment is here rendered in favor of appellant for the amount of said five notes, with legal interest from maturity thereof, and all costs of suit.

Reversed and rendered.